UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                          Case No. 22-cr-0104

STEVEN M. STATHAS, JR.,

Defendant.

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTIONS TO SUPPRESS

On May 3, 2022, a grand jury returned a two-count indictment charging Steven M. Stathas, Jr. with child enticement and committing a felony involving a minor as a registered sex offender. (ECF No. 1.) After being arraigned and receiving four extensions of his deadline to file pretrial motions, on September 23, 2022, Stathas filed two motions to suppress, seeking exclusion of: (1) all evidence recovered from a warrantless search of his vehicle; and (2) statements he made to police after that search. (ECF Nos. 17 and 18.) As to the former, Stathas claimed the vehicle search was not a valid inventory search, as the police had claimed. With respect to the latter, Stathas argued that the statements he made during his interrogation were the inadmissible fruits of an unlawful arrest. On November 23, 2022, Magistrate Judge Stephen C. Dries filed a Report and Recommendation denying both motions. (ECF No. 29.) Judge Dries agreed with Stathas that the search of his vehicle was not a valid inventory search but sided with the government in concluding that the police had probable cause to conduct the search anyway. The magistrate judge further concluded that there was probable cause to arrest Stathas and therefore, recommended both motions be denied.

On December 21, 2022, Stathas filed written objections to the report and recommendation. The government responded on January 12, 2023, and Stathas replied on January 20, 2023. For the reasons given below, the Court adopts the recommendation of Magistrate Judge Dries and will accordingly deny Stathas's motions to suppress.

## FACTUAL BACKGROUND[1]

On November 28, 2021, at approximately 11:00 p.m., Kentucky law enforcement authorities alerted the West Bend police that a fifteen-year-old girl, referred to as "J.H.," had run away from home with Stathas, a 30-year-old registered sex-offender from West Bend, Wisconsin. J.H.'s cell phone location indicated she was headed towards Wisconsin so West Bend police officers began monitoring the area near Stathas's residence. At about 2:45 a.m., the police observed Stathas's vehicle approach his apartment but drive past his residence to a nearby parking lot. Police officers stopped the car, located J.H and removed her from the vehicle for questioning. During the questioning, J.H. at first denied having any sexual contact with Stathas but when asked about consent then stated to the police that "if we did anything, yes, it'd be consensual." (ECF No. 38 at 5.). When Stathas was questioned, he stated that he knew J.H. through her mother, who he said was a friend. He was then unable to supply the mother's name or name any other family member. Stathas further told the police officers that when he noticed the squad car waiting for him at his residence, he decided to drive away.

After questioning Stathas and J.H., Lieutenant Brian McAndrews updated another officer by telephone in a conversation captured on the body camera worn by Officer Shawn Spencer. McAndrews explained that J.H. had been picked up in Kentucky by Stathas, a thirty-year-old sex offender from West Bend and that the policed stopped his vehicle after he drove past his residence to a nearby apartment complex. McAndrews indicated that although J.H. and Stathas had denied having sexual contact, McAndrews was "thinking child enticement, maybe use of a computer to facilitate a sex crime." McAndrews further stated, "I'm gonna have my guys impound his car to see what's in the car on an inventory search, and [the] chief would like a detective to do the interviews of [J.H. and Stathas]." McAndrews then told the other officer that they were going to "hook" or arrest Stathas.

The police officers detained Stathas for further questioning. Officer Spencer told Stathas he was "not under arrest," but then advised that the officers had to "talk about this a little more" given the age difference between Stathas and J.H. Spencer handcuffed Stathas, placed him in the back of his squad car and transported him to the police station. When Stathas arrived at the police station, he was placed in an interrogation room. Status asked several times to be released but was

---

[1] The background facts are not in dispute. They are recounted in greater detail with citations to the record in the magistrate judge's report. (ECF No. 29 at 2-5.)

informed he could not leave until he had talked to a detective. The detective arrived later and read Stathas his *Miranda* rights, which Stathas waived. Stathas denied having any sexual contact with J.H. but stated if such contact did occur, it was consensual. When Stathas was further questioned on this point, he refused to answer any more questions without a lawyer present, and the interview stopped.

The police impounded and searched Stathas's vehicle. In it, they found and seized cell phones belonging to J.H. and Stathas along with other evidence the government intends to use in its case against him. Stathas moved to suppress these items and all other evidence seized during the search, claiming the seizure and search violated the Fourth Amendment. Stathas also moved to suppress his statements made during the interrogation as the fruits of an unlawful arrest. Stathas claims police lacked probable cause for both the search and arrest.

## ANALYSIS

Stathas's motions turn on the issue of probable cause. If the officers had probable cause to arrest him and search his vehicle, both the materials found and Stathas's subsequent statements are admissible against him. Under the totality of circumstances, the record confirms the magistrate judge correctly concluded that there was probable both to arrest Stathas and to search his car without a warrant.

## I. The Police Had Probable Cause to Arrest Stathas.

"Probable cause is a common-sense inquiry requiring only a probability of criminal activity; it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred." *Young v. City of Chicago*, 987 F.3d 641, 644 (7th Cir. 2021) (citation omitted). "This is not a high bar." *Id.* (citation omitted). Evaluating probable cause requires looking at "the totality of the circumstances – 'the whole picture' – not each fact in isolation." *United States v Rosario*, 5 F.4th 706, 713 (7th Cir. 2021) (citations omitted). "If the underlying facts supporting the probable cause determination are not in dispute, the court can decide whether probable cause exists." *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993)

The information provided by Kentucky law enforcement to Wisconsin law enforcement was itself sufficient to support probable cause for Stathas's arrest. The "Attempt to Locate" alert notified West Bend law enforcement that: J.H., a fifteen-year-old girl, had run away from her

home in Logan County Kentucky that day; J.H. told a family friend that she was with Stathas; Stathas was thirty years old and registered in Wisconsin as a sex offender; tracking of J.H.'s phone showed she was likely on her way to Wisconsin. West Bend police knew that Stathas was a convicted and registered sex offender, who was in the company of a minor half his age, without the consent of her parents.

Stathas's observed conduct further supported a probable cause finding. Officers saw his vehicle in the early hours of the morning drive past his apartment to another nearby apartment complex. When questioned, Stathas acknowledged that he drove past his apartment because he noticed the squad cars waiting for him and decided to drive away. Status also claimed to be friends with J.H.'s mother but was then unable to provide her name. This conduct reasonably indicated to the officers that he was being less than truthful about his relationship with J.H.

Probable cause was cemented by information the police obtained from J.H. When they asked her whether there had been any sexual contact with Stathas, she initially denied any sexual contact but later stated that any such contact would have been consensual. J.H.'s answer reasonably suggested that sexual contact had, in fact, occurred. Given the totality of these facts, this Court has no difficulty finding that the officers had probable cause to arrest Stathas.

Stathas argues that the police had at most reasonable suspicion to detain him and accuses the magistrate judge of "conflat[ing] probable cause with reasonable suspicion." (ECF No. 36 at 8.) Stathas's accusation is misplaced. The magistrate judge's report properly applies the more demanding probable cause standard and the judge correctly concluded that this standard was met. While the report cites multiple instances of Stathas's *suspicious* conduct (driving past his apartment when he noticed squad cars in the vicinity; claiming to be friends with J.H.'s mother without knowing her name) and other *suspicious* circumstances (being in a vehicle with an underage runaway, 500 miles from her home, at 2:45 a.m. in the morning), the magistrate judge correctly assessed those facts with others (J.H. did not have parental permission to be traveling with Stathas, who was a convicted sex offender) in concluding that the totality of the circumstances met the probable cause standard. This is not the same as a finding of mere reasonable suspicion. Indeed, the police likely would have been able to show reasonable suspicion based on any single one of these many suspicious facts. *See United States v. Wilborn*, 799 F.3d 900, 909 (7th Cir. 2015) ("'Reasonable suspicion' has never been reduced to a mechanical formula but embodies

'something less than probable cause and more than a hunch.'") (citation omitted). In this case, the totality of circumstances firmly established the more exacting standard of probable cause.

Stathas contends that the "officers involved recognized that they lacked probable cause" and criticizes the magistrate judge for "mistakenly f[inding] that the officers subjectively believed that there was probable cause." (ECF No. 36 at 6, 9.) Stathas's argument misstates the record and the law. Probable cause is "assessed objectively" based on the "conclusions that the arresting officer reasonably might have drawn from the information known to him rather than his subjective reasons for making the arrest." *Holmes v. Vill. of Hoffman Ests.*, 511 F.3d 673, 679 (7th Cir. 2007). As previously noted, the objective evidence provided ample probable cause to detain and later arrest Stathas. Whether the officers subjectively believed and expressly announced that they had probable clause is irrelevant. *See Abbot v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013) ("Determining whether an officer had probable cause to arrest entails a purely objective inquiry; the officer's subjective state of mind and beliefs are irrelevant."). Moreover, and in any event, to the extent the officers' subjective beliefs have any bearing on the probable-cause determination (and it does not seem that they do), the undisputed evidence shows that the officers believed they had probable cause to arrest Stathas after the stop. Lieutenant McAndrews was aware of the information provided in the alert, observed Stathas suspiciously drive past his apartment to another nearby apartment in the early hours of the morning, and when questioned, Stathas provided false information by claiming he knew J.H.'s mother without knowing her name. J.H. offered that if she had engaged in sexual activity with Stathas, it was consensual. All of this evidence led McAndrews to state that the officers planned to "hook" i.e., arrest Stathas and search his car. While Officer Jensen later told Stathas that he was not under arrest (either incorrectly or possibly to avoid any resistance in taking Stathas into custody as the magistrate judge surmised), the officers simultaneously refused to let Stathas leave. Jensen's statement does not erase or override Lt. McAndrew's decision to "hook" or arrest Stathas at the scene of the arrest.

Stathas next contends that the magistrate judge "put undue weight on the fact that Stathas was a registered sex offender." (ECF No. 36 at 8.) There is no indication that "undue weight" was placed on this fact. Prior convictions are "relevant and entitled to some weight" in the probable-cause analysis. *United States v. McDuffy*, 636 F.3d 361, 364 (7th Cir. 2011). And, as the report correctly observes "authorities were able to make a direct inferential link between Stathas's prior conviction(s) for sex crimes and the fact that he was now transporting an underaged

runaway girl without the consent of her parents." (ECF 29 at 12.) Stathas's sex offender status was only one of many factors that led the officers to have probable cause to arrest him.

Stathas further contends that the time of the encounter should have had no bearing on the probable cause determination as 2:45 a.m. merely reflected the time to drive from Logan County to West Bend. The Court again disagrees. The fact that Stathas was driving in the "wee small hours" of the morning served to further support and strengthen probable cause that a felony was being committed. (ECF No. 29 at 13.) The magistrate judge properly considered the timing of the events along with that fact that he was in the company of a girl half his age, 500 miles from her home, without her parents' permission. The Court concludes it would certainly be atypical in West Bend, Wisconsin for a minor from another state to be out on the road, in the company of a man twice her age, who is not her relative, and at 2:45 a.m., in particular. *See id* at 12-13.

## II. Probable Cause Existed to Search Status's Car.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, homes, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. Under the protections of the Fourth Amendment, searching a car, without a warrant, is presumptively unreasonable, unless that search comes within a few well-established exceptions. *Arizona v. Gant*, 556 U.S. 332, 338 (2009*); United States v. Harris*, 791 F.3d 772, 777 (7th Cir. 2015). In this case, two exceptions are applicable: searches predicated on the "search incident to arrest" theory and those predicated on the "automobile exception." *United States v. Edwards*, 769 F.3d 509, 514 (7th Cir. 2014). The first authorizes a warrantless search of a vehicle incident to the arrest of one of its occupants. The "police may search a vehicle incident to a recent occupant's arrest . . . [if] it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant*, 556 U.S. at 351. Under the automobile exception, "where there is probable cause to believe that the vehicle contains contraband or evidence of a crime, law enforcement may conduct a warrantless search of the vehicle." *United States v. Zahursky*, 580 F.3d 515, 521 (7th Cir. 2009). These exceptions "are interrelated, but not identical." *Edwards*, 769 F.3d at 514. "The suspicion required for a vehicle search incident to arrest . . . is keyed to the offense of arrest; the automobile exception is not tied to an arrest." *Id.*

Status argues there "wasn't an objective basis for the police to believe that Stathas's car contained evidence of a crime." (ECF No. 36 at 11.) Stathas is incorrect. As previously noted,

the officers had probable cause to arrest Stathas given the facts that J.H. was a minor being transported without her parents' permission over 500 miles away from her home, Stathas engaged in evasive behavior by driving past his own residence and then seemingly lied to the police about his relationship with J.H.'s mother. J.H.'s responses to the officer's questioning gave rise to legitimate concerns that J.H. and Stathas had engaged in sexual activity and therefore Stathas had probably engaged in criminal activity. As such, they were permitted to search the vehicle "incident to arrest" because the officers had probable cause to arrest Stathas. The officers also had probable cause to believe that the vehicle might contain evidence of criminal activity and search the car under the automobile exception. It was reasonable for the police to believe that evidence of child enticement or use of a computer to facilitate a sex crime, the criminal activity suspected by Lieutenant McAndrews, would be found in Stathas's vehicle.

## CONCLUSION

After a *de novo* review of the recommendations made by Magistrate Judge Dries under 28 U.S.C. §636(b)(1), the Court overrules the Defendant's Objections (ECF No. 36) and accepts, in its entirety, the Report and Recommendation of the Magistrate Judge (ECF No. 29).

Accordingly, **IT IS ORDERED** that Defendant's Motions to Suppress (ECF No. 17 and ECF No. 18) are **DENIED**.

Dated at Milwaukee, Wisconsin on January 26, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge